[No. 4081.]

HAINES V. CHRISTIE ET AL.

1. ESTATES OF DECEDENTS—WILLS—ADVANCEMENTS.

Where a decedent during her lifetime advanced to some of her heirs sums of money for which they executed their notes and on which they paid interest and in her will these sums were not mentioned, in distributing the estate amongst the heirs under the will these sums so advanced are to be accounted for as debts to the estate and not as gifts.

2. SAME.

Where a son of decedent had received money from her during her lifetime for which he had given his note and in her will appeared this clause "As long as my son lives and his heirs whatever received from my estate is his," and a codicil to the will specially mentioned the note directing that if presented he should appropriate so much thereof as would compensate him for his services in the settlement of the estate and if more than enough to pay him the balance to be paid to another heir named. the clause referring to whatever was received by him had reference to what he received from the estate under the will and not to money received as a loan during the life of decedent.

3. ESTATES OF DECEDENTS—PRINCIPAL AND AGENT—LIABILITY OF AGENT TO ESTATE FOR MONEY LOANED FOR DECEDENT.

Where during the life of decedent her son had the management of her money with authority to loan the same, he was not liable to the estate for money loaned during her life to persons who became insolvent, unless it be shown that he was guilty of negligence in making such loans.

4. ESTATES OF DECEDENTS—EVIDENCE—BOOK ACCOUNTS.

Where during the life of decedent her son had the manage-

ment and handling of her money, in an action for an accounting and settlement of the estate the account books of the son are not admissible in evidence without the proper preliminary proof that the books were made and kept in the usual course of trade and business.

5. SAME.

The inhibition imposed by section 4816 Mills Ann. Stats. which provides that no party to an action or person directly interested in the event thereof, shall be allowed to testify therein of his own motion or in his own behalf when the adverse party sues or defends as heir or legatee of a deceased person, does not extend to books of accounts between a party to a proceeding and a deceased person.

6. ESTATES OF DECEDENTS—PROMISSORY NOTES—INDORSEMENTS OF CREDIT—EVIDENCE.

Where during the life of decedent her son had the handling and management of her money and kept in his own possession a note given to her for money loaned to him by her, after her death, in an action for an accounting and settlement of the estate, indorsements of credits made on the back of the note in his own handwriting were not admissible as evidence of payments made on the note.

7. ESTATES OF DECEDENTS—WILLS—SPECIAL BEQUESTS—LIFE ESTATE —SETTLEMENT OF ESTATE.

Where a decedent in her will specially bequeathed to her daughter a life estate in the homestead and then directed the distribution of her estate amongst the heirs, in a settlement and distribution amongst the legatees the value of the life estate so bequeathed cannot be taken into account and charged to the legatee, but where other heirs and legatees conveyed to her their interests in the homestead the value of the interests thus conveyed should be taken into account and charged to her as part of her legacy under the will, unless a state of facts be disclosed that shows that she was not to account for such interests.

*Error to the District Court of Arapahoe County.*

Mr. JAMES H. BROWN, Mr. CAESAR A. ROBERTS and Mr. A. W. GILLETTE for plaintiff in error.

Mr. JOHN D. FLEMING, Mr. RALPH TALBOT and Mr. AMOS STECK for defendants in error.

Mr. JUSTICE GABBERT delivered the opinion of the court.

The parties to this proceeding are the heirs at law and dev-

isees of Diadamia Haines, deceased. While the subject matter of controversy is her estate, the real purpose of the action is the settlement of accounts between the parties growing out of moneys received by them from her. Several years prior to her death she received a large sum of money from the sale of real estate on Court Place, in the city of Denver, which was placed in the hands of plaintiff. During her lifetime he managed her affairs and invested and disbursed this money. It represented practically all of her property. Out of this money she gave each of her children, Mrs. Christie (one of the defendants), Mrs. Caroline A. Schroter (since deceased), and plaintiff, the sum of four thousand dollars, and invested ten thousand dollars in a residence, known as 1435 South Fourteenth Street, which she occupied as a homestead. For the greater part of the period from that time down to the date of her death, Mrs. Christie and her sons, Sidney and Daniel, made their home with her. Not long after the purchase of this house, Mrs. Schroter and her husband died. Thereafter the Schroter children, except Harriet W. Bacon, made their home with their grandmother until 1892, when Annie D. Patterson, *nee* Schroter, married. From thenceforth the Schroter brothers continued to live with their grandmother more or less of the time. None of these parties were ever required to pay for the home thus furnished, or contribute anything to its support. Plaintiff maintained his own home. At the time of the death of the husband of Caroline A. Schroter, deceased, he was engaged in business with plaintiff. This business was thereafter continued by Sidney H. and Frank C. Schroter, who took the place of their father, under the old firm name of Schroter & Haines. For the support of the household maintained by Mrs. Haines, plaintiff paid out funds from time to time. During the lifetime of Mrs. Haines, the defendants, except Harriet W. Bacon and Annie D. Patterson, had received money from her through plaintiff. He had also received, or made use of, a part of the money

coming into his hands belonging to deceased. The firm of Schroter & Haines also had the use of part of it. Mrs. Haines left a will, of which the following is a copy:

"This will is written by Mrs. Diadamia Haines in her own handwriting September 20th, 1889 in a perfectly sound mind, unsolicited by any one but feeling my end drawing nigh, in justice to myself and all others concerned in the little estate I have I write my wishes, to be carried out in every letter of the word.

The house I live in South Fourteenth 1435 I bequeath to my daughter Mrs. Annie M. Christie during her lifetime, but should she marry it must be sold and equally divided amongst the heirs of Sidney P. Haines my son, Anna M. Christie my daughter, and the children of my daughter Caroline A. Schroter, now dead. The furniture in the house principally belongs to Mrs. Christie, she having bought it with her own money. What little I own in the house of furniture in case of her death will revert back to the heirs. Her own furniture will be exclusively given to her two sons Sidney J. Christie and Daniel H. Christie.

My real estate whatever I leave is to be equally divided amongst the three surviving heirs, Sidney P. Haines, Annie M. Christie, Caroline A. Schroter children, let the amount be more or less. The solid silver I have long since given to Mrs. Christie. I have given Mrs. Schroter the same as given her Mrs. Christie was not gvien her for particular reasons. The house I leave Annie M. Christie must always be considered a home for Annie Schroter as long as she remains single, or if this home that Annie M. Christie occupies should be sold and she purchase another, the same request must be carried out, that is if Annie Schroter sees fit to accept. As long as my son Sidney lives and his heirs whatever received from my estate is his, but if he dies and leaves no heirs, his widow shall enjoy the portion of that given from my estate as long as she lives, but at her death it must revert back if living to the other heirs of my two children Caroline A. Schroter and Annie M. Christie.

The large old chair the family relic is to go to Sidney Haines, my son, to sit in until his death, then to come back to the family as a sacred relic of past generations. The vase on the front mantel is his, also the birds on the hall mantel and Washingtons frame. I leave the whole settlement of my estate in his hands Sidney P. Haines, knowing his honesty and my implicit confidence in his integrity he will do everything that is right.

When I die I want no parade over my funeral; if anything is said over my remains pay him ten dollars; I want none but my own family to follow my remains to my last resting place, no flowers. My whole life has been for the interest of my children and grandchildren. May the blessings of God always attend, and that you may live in love and harmony is the prayer of your mother.

<i>Diadamia Haines.</i>

Witnesses:

    J. A. Dean

    G. W. Wyatt—9—23—89

I request that no bonds be given for the settlement of my estate. A note of $5000.00 of long-standing given to my son Sidney by his mother if presented by dissatisfaction I request him to appropriate it in compensation, as much as will repay him for the settlement of my estate and his trouble should this amount be more than his charges what is over give it to Annie Schroter as a legacy from her grandmother, Mrs. Diadamia Haines."

This will was admitted to probate and plaintiff qualified and entered upon the discharge of his duties as executor. Prior to the probate of the will, an arrangement was made by the parties to this proceeding, whereby Mrs. Christie received from the others a conveyance to the homestead. Thereafter a dispute arose between them relative to the management of the affairs of deceased by plaintiff during her lifetime, and the character of the transactions between deceased and the parties to this proceeding with respect to the money received by them from her. Mrs. Christie,

at least, claims that plaintiff had received more than his share, and had not fully accounted for the funds placed in his hands. Action was thereupon commenced by plaintiff for an accounting, to which he made his co-heirs and devisees parties defendant. He claims that the parties came together and arranged a family settlement, whereby it was mutually agreed that each should be permitted to keep the several sums received from deceased; that Annie M. Christie should have the homestead, and that the personal property mentioned in the will should be disposed of as therein provided; that each of the parties should be released and discharged from any and all claims of one to the other. In pursuance of this arrangement it is claimed that the homestead was conveyed to Mrs. Christie. He also claims that the amount which he paid each heir during the lifetime of deceased, as also the money represented by his note, were moneys upon which each was expected to pay interest during the lifetime of his mother, and at her death were to be treated as gifts or advancements on their respective shares of the estate, but not to be accounted for; that by the will he was given the money represented by his note. The claim of the defendants who answered is, in substance, that there was no settlement, and that the sums severally advanced the heirs were loans to them, and payable to the estate with interest, and that under the will none of the money coming into the hands of plaintiff was disposed of. The court resolved the issues thus made against the plaintiff, and found the total value of the assets of the estate in controversy to be the sum of $38,211.77, itemized as follows:

1. Note of plaintiff, and interest,...............$17,059.73
2. Note of Taylor & Houghan, and interest,...... 602.20
3. Note of Richards, and interest,............... 148.00
4. Note of Baker, and interest,................. 740.00
5. Note of Annie M. Christie, and interest,...... 3,254.04
6. Note George A. Schroter, and interest........ 1,379.64
7. Note Frank C. Schroter, and interest,........ 3,276.96
8. Note Sidney H. Schroter, and interest, and ¼

Schroter & Haines account,.................  3,090.86
9.  Sidney P. Haines, ½ indebtedness of Schroter &
    Haines, and interest,......................  2,381.73
10.  Sidney P. Haines book account, and interest...  3,598.69
which, for convenience, we have numbered consecutively from 1
to 10, inclusive.

In adjusting the accounts, the court charged plaintiff with
items 2, 3, 4, 9, and 10, and also an item of $2,679.92, note of T.
B. Dean, and interest, amounting in all to the sum of $10,150.54,
which, with his note—item 1—made the total indebtedness of
plaintiff $27,210.27.  His distributive share of the estate being
1-3 of the total assets, was $12,737.26, which left him indebted
in the sum of $14,473.01.  From the distributive share of Mrs.
Christie there was deducted the amount of her indebtedness,
which left a net balance due her of $9,483.32.  By the same
method of computation, George A. Schroter was credited with
$1167.81; Sidney H. Schroter charged with $543.41; Frank C.
Schroter charged with $729.51; Harriet W. Bacon credited with
$2,547.45; Annie D. Patterson credited with $2,547.45.  Mrs.
Christie was also decreed to be the owner in fee simple of the
homestead.  The court further directed that the parties indebted
should pay into court the respective sums found to be due from
them, and that the sums so paid be distributed among the other
parties according to the amounts found to be due them respec-
tively.  From this judgment the plaintiff brings the case here
for review on error.

The main question is, were the sums of money had by the heirs
gifts or advancements, or were they debts to be accounted for to
the estate of decedent by the respective heirs?  The evidence
does not tend to prove that the several amounts which the heirs
received during the lifetime of Mrs. Haines were to be treated as
gifts.  Subsequent to the execution of her will, it appears from
the statement of plaintiff that he received large sums of money
belonging to deceased; so that her money had not all been dis-

posed of at the time she executed her will. She maintained a home at her own expense for the benefit of the heirs who lived with her. It was not her intent that those parties should be charged with any part of the expense connected with the maintenance of this home. For the purpose of further assisting them, she appears to have let each of the parties, except Mrs. Patterson and Mrs. Bacon, have money. There is no evidence to the effect that those receiving money should not at some time, and in some appropriate way, account therefor. The moneys thus received were evidenced as loans usually are, and some interest appears to have been paid thereon.

The evidence fully supports the finding of the trial court, that no family settlement was effected, as claimed by plaintiff, on account of the conveyance to Mrs. Christie. In fact, there is no testimony tending to prove that there was, and even if the trial court erred, as claimed by plaintiff, in admitting immaterial testimony to prove that there was no such settlement, it was not prejudicial to the rights of plaintiff.

Plaintiff's claim that the money represented by his own note, was given him by the terms of the will, is not tenable. There is no attempt on the part of the testatrix to make a disposition of her property of the character represented by the transactions growing out of the management of her affairs by plaintiff. Except the note mentioned in the codicil, the personal property referred to in the will consists of furniture, silverware, and some family relics. The other items referred to realty alone. The clause in the will which recites that "As long as my son Sidney lives and his heirs whatever received from my estate is his," does not refer to any property which he may have theretofore received at her hands, but to that which he might receive from her estate. If such had not been the intent of the testatrix, she would not have deemed it necessary to add the codicil. Consequently, there is nothing in the will upon which plaintiff can base the claim that the money which he had received from

his mother was to be treated as a bequest. The trial court, there-fore, correctly resolved the issues in favor of the defendants, and proceeded upon the correct theory in requiring each of the parties to account for the money received from deceased subse-quent to the original gift of four thousand dollars each; and the only remaining questions are, did the court commit pre-judicial error in rejecting material evidence which, if considered, might have resulted in a different judgment from that rendered, and whether there should have been taken into account the prop-erty conveyed to Mrs. Christie?

Plaintiff offered in evidence the notes of Taylor & Houghan and W. H. Baker. It is conceded that these notes represent funds belonging to the deceased, which plaintiff loaned. There is no evidence that he did not have authority to make these loans. Counsel for defendants in error, in their brief, say: "Nobody ever disputed that the plaintiff was the trustee and agent of his mother to handle these funds, but the question is not whether he was her trustee and handled the funds, but how he handled them; that is the contention." The notes in question have never been collected, because, it is claimed on the part of plaintiff that the makers are now insolvent. Having the author-ity originally to make these loans, he should not have been charged with the amount of the notes and interests, unless it appeared that he had been guilty of negligence with respect to such loans. There is no evidence to this effect; and in the state of the record as presented to us, he was improperly charged with the amount of these notes. The notes of Richards and Dean were also charged to plaintiff. His claim is that they have been collected and the money thus received turned over to his mother. For the purpose of showing these facts, he offered in evidence the books of Schroter & Haines, which he claims exhibited the account with his mother, including these items. The books were refused.

On behalf of defendants it is urged that the books were prop-

erly refused for two reasons: (1) That the preliminary proofs required by section 4817 Mills Ann. Stats., were not made; and (2) That such books were not admissible, because of the provisions of section 4816 Mills Ann. Stats., which provides that no party to a proceeding directly interested in the event thereof shall be allowed to testify therein of his own motion, or in his own behalf, when any adverse party defends as the heir of a deceased person. The first point is well taken. Before such books were admissible, it was necessary for plaintiff to offer testimony tending to prove that they were made and kept in the usual course of trade and business, and by the party keeping them in pursuance of his duty or employment—*Farrington v. Tucker,* 6 Colo. 557. The fact that plaintiff was an interested party, and that the adverse parties were defending as the heirs of Diadamia Haines, deceased, would not render such books incompetent if the proper preliminary proofs were made. Such books were admissible at common law for the reason that when it appeared that they were made up, or contained entries made as a part of the ordinary and regular course of business, the ordinary motives for untruth would be removed, and that they therefore contained a true statement of the matters, to which such entries refer, 1 Greenleaf on Evidence, 16th ed., sec. 120a, et seq. The inhibitions imposed by section 4816 *supra* do not extend to books of account between a party to a proceeding and a deceased person.—*Orcott v. Hanson,* 70 Iowa 604. We do not hold, however, that plaintiff is competent to testify to the facts necesssary to constitute the preliminary proofs required to render the books of account admissible. We do not pass upon this proposition.

The note of plaintiff had always remained in his hands. He claims to have paid interest on this note to the amount of $2270, which was evidenced by endorsements thereon in his own handwriting. This credit was not allowed. It is claimed that these endorsements should have been received as evidence for the

purpose of establishing his claim that he had paid this interest. In the circumstances of this case, we do not think such endoresements were competent to prove the payment of interest. They were in his own handwriting; the note had always remained in his possession, and we know of no rule of law which would make such endorsements competent.

The devise to Mrs. Christie was a conditional life estate in the homestead. This was a special bequest. It cannot be taken into account in adjusting matters between the parties. Whatever the value of the interest in this property may be which she received through the conveyance from the other heirs and devisees must be considered, however, unless a state of facts should be disclosed which will relieve her from accounting for this interest. As to whether or not she is now bound to so account, upon the record before us we express no opinion.

For the errors mentioned, the judgment must be reversed and the cause remanded for a new trial. We have not noticed all the assignments of error argued, but only such as indicate what matters should be taken into consideration upon a re-trial, and the character of testimony admissible. Each party should be charged with the amount received during the lifetime of Mrs. Haines, with interest thereon (except the original four thousand dollars given each heir when the property on Court Place was sold), and credited with whatever amounts were paid thereon. If it should appear that Mrs. Christie should account for the value of the interest in the homestead which she received through the conveyances from the other heirs and devisees, she should be charged with such value, and the others given credit for their *pro rata* share. Plaintiff should be credited with all sums which, by competent, satisfactory evidence, he establishes has been disbursed in the discharge of his trust. Each should be credited with his or her distributive share of the assets, and charged with the money or other property received, or money unaccounted for, as the case may be. The ballances thus ascertained will exhibit

the account between the parties.  The judgment is reversed and the cause remanded for a new trial.

*Reversed and Remanded.*

Mr. JUSTICE STEELE not participating.