[No. 4366.]

THE FARMERS' HIGH LINE CANAL AND RESERVOIR COMPANY ET AL. V. WHITE ET AL.

1. **Water Rights—Priorities—Pro-rating Amongst Consumers from Same Ditch.**

Appropriators of water from the same stream through the same ditch may have different priorities of right to the use of the water, and in times of scarcity of water, consumers having the earlier priorities may not be compelled to pro-rate the water of the ditch with other consumers having later priorities of rights.

2. **Same—Evidence—Burden of Proof.**

Consumers of water from a ditch claiming a prior right to the use of the water over other consumers from the same ditch and asking that the carrier be restrained from pro-rating the water in times of scarcity amongst all the consumers from the ditch, are charged with the burden of proof to show by a preponderance of evidence that they are entitled to the relief asked, and should lay before the court, in full detail, the facts concerning their priorities, the dates when they attached, the amount of water they are entitled to receive, and the same data with respect to the rights of other consumers who are alleged to have no right to a pro-rata share in times of scarcity.

3. **Water Rights—Pro-rating Amongst Consumers of Same Ditch—Parties—Waiver.**

In an action by consumers of water from a ditch, claiming a prior right to the use of water over other consumers, to prevent the pro-rata distribution of the water in times of scarcity, all consumers claiming such priority of right must be joined as parties plaintiff, or if their consent thereto cannot be had, must be made parties defendant, and all consumers alleged to have inferior rights must be made parties defendant, so that the rights of all consumers from the ditch can be adjudicated and settled in the one action. In such action the ditch company cannot represent water consumers who are stockholders in the ditch company, and the fact that the ditch company answered over after demurrer would not waive the objection of nonjoinder of parties.

4. **Water Rights—Pro-rating Amongst Consumers—Decree.**

A decree against a ditch company enjoining it from compelling plaintiffs to pro-rate the waters of the ditch in times of scarcity with any of the stockholders of the ditch who became consumers of water for the first time subsequent to an enlargement of the ditch at a specified time without any finding or statement in the decree as to who the stockholders are whose rights accrued prior to that time, or the amount of water to which they are entitled is indefinite and defective.

5. **Evidence—Rejection of Material.**

Where material evidence is admitted on behalf of plaintiff it is error to refuse to permit defendant to introduce similar negative evidence.

*Appeal from the District Court of Jefferson County.*

Mr. GEORGE W. TAYLOR, Mr. S. A. OSBORN and Mr. J. W. BARNES, for appellants.

Messrs. BENEDICT and PHELPS and Mr. W. A. DIER, for appellees.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

In 1860 the Golden canal was constructed to divert the water of Clear Creek with which to irrigate agricultural lands. In 1872 the structure was enlarged to carry an additional supply. In 1884, in

statutory proceedings brought for that purpose in the appropriate court, a first priority was awarded the canal for 39.8 cubic feet of water per second of time as of the date of original construction, and a second priority of 154 cubic feet of water per second of time as of the date of the first enlargement. In 1885 the defendant The Farmers' High Line Canal and Reservoir Company was incorporated to purchase the rights and franchises of the canal, which it acquired soon after its organization.

The plaintiffs are consumers of water, which they had utilized through the medium of the Golden canal before its purchase by the defendant company. From the allegations of the complaint it is not certain whether plaintiffs claim any part of the first priority of 1860, but the averments assert a priority not later than the year 1872, though there is uncertainty both in statement and proof as to the origin of their rights. The complaint alleges that after the defendant company acquired the canal it enlarged the same at different times, and by divers methods obtained, or claimed to have secured, for carriage therein a large quantity of water in addition to that represented by its first two priorities, and in times of scarcity, and when the water commissioner has cut out the later appropriations, that, entirely disregarding their priority, it has compelled, and threatens hereafter to compel, the plaintiffs to pro-rate the water of the first two appropriations, in which they are owners, with its stockholders whose rights attached not earlier than the spring of 1886, at the time of the second enlargement of the canal, and which are not traceable at all to either of the earlier appropriations.

The plaintiffs own about 870, out of about 7,000 or 8,000 cubic inches of water per second of time belonging to the first two priorities, but they say they sue in behalf of themselves and all others simi-

larly situated. With the ditch company the plaintiffs joined as defendants some of its stockholders and the complaint alleges that the names and places of residence of all of them are unknown to the plaintiffs, but they are so numerous that it is practically impossible to make all of them parties defendant. They ask, therefore, for an order of court, under the authority of section 12 of the civil code, that defendant stockholders who have been made parties shall defend for the benefit of all.

The complaint, the substance of which, so far as the questions to be determined on this appeal are concerned, has been above summarized, was attacked by a motion containing several grounds which was in part sustained and partly overruled. The defendants then interposed a demurrer, containing about all of the grounds enumerated in the code of civil procedure, and when this demurrer was overruled, they filed an answer substantially denying the material allegations of the complaint, and containing a number of special defenses, such as estoppel, laches, the statute of limitations, acquiescence in the pro-rating complained of, and waiver.

Upon the trial before the court the issues of fact were found in favor of plaintiffs, and a decree rendered which, among other things, enjoined the defendant company during a shortage of water from compelling plaintiffs to pro-rate the water of the first two priorities to which they are entitled with its stockholders who became users of water subsequent to January 11, 1886.

It will be observed from the foregoing statement that the controversy is not one between different ditches, but between consumers of water from the same ditch. In *Farmers' High Line, etc., Co. v. Southworth,* 13 Colo. 111, a similar case was considered, in which each of the three members of the court, as then

constituted, wrote a separate opinion, from which it would appear that no one of the learned judges was in entire accord with either of the others as to the main question discussed. That case really went off upon a question of pleading, though in connection with the point decided each of the judges expressed, at some length, his views upon the constitutionality of the so-called pro-rating statute of 1883, and the majority were of opinion that the pro-rating it provided for, if enforced literally and irrespective of the priorities of the several consumers, was inhibited by the constitution. Mr. Justice Helm disagreed with his associates as to the case made by the complaint, as well as in some of his views upon the subject of pro-rating, and declared that the question involved in the case was this: "May the legislature provide that, in times of scarcity, water shall be pro-rated among consumers having priorities of the same date?" Upon this proposition, and in view of his construction of the complaint, he was of opinion that the so-called pro-rating statute was applicable to the case as made.

In *Nichols v. McIntosh*, 19 Colo. 22, it was said that a majority of the court in the Southworth case held that appropriations of water by the consumers who received the same through the same ditch do not necessarily relate to the same time, but, on the contrary, such consumers may have different priorities of right. In *Ditch Co. v. Ditch Co.*, 22 Colo. 513, 521, this court, speaking through Chief Justice Hayt, in summarizing certain doctrines that had been theretofore established, and which were supposed to have some bearing upon the issues then under consideration—though such statement, as well as a similar one in the Nichols case, may have been *obiter*—said that appropriators of water from the same stream

through the same ditch may have different priorities of right to the use of such water, based upon the time of the several appropriations. In *Brown v. Canal & Reservoir Co.*, 26 Colo. 66, in a case which seems to have been the forerunner of the case at bar and involving practically the same legal questions, the court, speaking by Goddard, Justice, again in effect declared the same doctrine. It therefore may be considered as *stare decisis* in this jurisdiction that there may be circumstances in which water consumers from the same ditch may not be compelled to pro-rate with each other. It is upon this doctrine that plaintiffs rely, and they attempted to establish at the trial that they are not within the purview of the pro-rating statute, or, if so, that it is invalid as to them.

A number of objections to the decree and to the various proceedings below have been argued, with many of which we are not at present concerned. We are of opinion that the decree cannot stand upon several grounds which we will presently proceed to consider. First, however, it is to be observed that vehement declamation and extreme and indiscriminate criticism of the rulings of the trial court are not helpful to, nor do they specially commend themselves to the consideration of, an appellate tribunal, unless grounded upon a more solid foundation than appears in the present case. Some of the objections of counsel for plaintiffs in error, however, are good, and these we now take up.

1. The evidence of plaintiffs' witnesses does not furnish sufficient definite data on which to predicate a favorable decree in a matter of such importance. Just what quantity of water belongs to the respective priorities which have been awarded to the canal and the foundation of the alleged priorities of plaintiffs, may inferentially appear, but we have searched the

record in vain for such satisfactory evidence. The quantity of water belonging to the respective plaintiffs may have been correctly determined, though there is not that certainty in the evidence which is desirable. But that the time when their rights accrued, and that plaintiffs' rights are so superior to defendants' as to authorize a decree preventing the carrier from compelling a pro-rating in time of scarcity, have not been proved by that preponderance which should attend such a case, we are entirely clear. We are not able to say from the record just what relation plaintiffs sustain to defendant company with respect to their interests in its decreed priorities. One of the claims of defendants, to which proof was offered, was that defendant company was organized as a mutual concern, by those who afterwards became its stockholders, for the purpose of acquiring this canal as a medium for conveying and supplying to them certain water which was purchased in connection with the physical ditch, and that the main purpose was not to carry water for hire for others, and not at all except incidentally, and only as that duty rested upon defendant company's grantor, with respect to early consumers, among whom are plaintiffs, or some of them, and which was assumed by the grantee, and which it declares it has always observed, and with which it is now willing and ready to comply.

It is undoubtedly true that defendant company did acquire some water of the first and second priorities which it might supply to its stockholders, whose rights are at least equal to the rights of plaintiffs. Upon what evidence the court made its decree, apparently not considering, certainly ignoring and not sufficiently protecting, such rights, we are unable to conjecture, for we do not find any sufficient evidence of the facts upon which only ought an enforceable

decree in plaintiffs' favor to be made. That clause of the decree permitting the delivery to the stockholders of a quantity of water out of the appropriations of 1860 and 1872 equal to that impounded and saved by it in reservoirs, is not intended to, and does not, protect them as to interests they may have in these earlier priorities themselves. It was not incumbent on defendant company, but upon plaintiffs, to produce the necessary evidence to sustain the material allegations of the complaint.

As plaintiffs do not question the right of the defendant company to compel consumers similarly situated to pro-rate with each other as to the water of the first and second priorities, they assert that it is a matter of no concern to it when plaintiffs' rights attached, provided only they became vested before its acquisition of the canal. This may, or may not, be true; yet it would be a harsh doctrine to say that if plaintiffs' rights attached only a few months or a year or two before the alleged enlargement of the canal in 1885 or 1886, they might not be compelled to pro-rate with those water consumers whose rights attached within a short and reasonable time thereafter. And so we are of opinion that such an important adjudication should not be made upon the indefinite and insufficient data which the record presents, but that plaintiffs should lay before the court, in full detail, the facts concerning their priorities, the dates when they attached, the amount of water they are entitled to receive, and the same data with respect to rights of defendants which are said to be inferior, so that the court may frame an intelligent and workable decree settling the rights of all parties claiming service from the carrier.

2. In *Brown v. Canal Co., supra,* which in all substantial respects presents the same issues as the

case in hand, it was held that the parties claiming the right to pro-rate are necessary parties and must be joined as codefendants with the ditch company. In bringing this action plaintiffs did not observe the rule there laid down, but seek to escape it by alleging that the names and places of residence of all defendant company's stockholders are unknown to them, and that they are so numerous as to make it impracticable to make them all parties, and therefore they name several defendants, and ask that they be required to defend for all who are similarly situated. These allegations of the complaint, if proved, as laid, would not excuse a departure from the established practice, but 'they were denied, and, so far as we are advised, there was no proof to sustain them. During the trial of the case the court, apparently *sua sponte,* made an order requiring defendant company to furnish and file with the court a list of all its stockholders, which was done, but we find no order by the court requiring those who were joined as defendants to defend for the benefit of all, or an order requiring the stockholders whose names were furnished to be made parties defendant. Though there are many stockholders of defendant company, they are not so numerous as to make it impracticable to bring them in as parties, and, by the exercise of ordinary diligence, plaintiffs could have readily ascertained their names and places of residence.

In the view of these considerations, it was so palpably erroneous for the trial court, against defendants' objections, to proceed to a decree without the presence of indispensably necessary parties that, for this mistake alone, the decree must be reversed. Their interests as consumers are manifestly affected. An attempt has been made to pass upon valuable rights and deprive parties thereof without an oppor-

tunity to be heard, and with no one before the court upon whom rested the duty of protecting the rights involved as against those making the assault. The plaintiffs, with considerable force, argue that this doctrine laid down in the Brown case is wrong and contrary to the weight of authority. We are not impressed with the argument, and are of opinion the doctrine there enunciated by Mr. Justice Goddard is right and must be adhered to. Only a slight consideration will, we think, clearly demonstrate it. The controversy, as was there said, is not one between independent ditch companies, but between appropriators or consumers of water from the same ditch. Certainly, plaintiffs would be the last ones to say that the defendant ditch company was under less obligation to protect their interests as water consumers than to guard the interests of their stockholders, who are also consumers. The defendant stockholders are concerned, not only as such in the ditch enterprise, but they also occupy the position of water consumers, and in that respect sustain towards the defendant company precisely the same relation that the plaintiffs do, and in such capacity are entitled to be heard upon the charges made in the complaint. The legal duty of defendant company is to all its water consumers, whether stockholders or merely holding contracts from it for service as a carrier. In such a controversy as this it can no more represent water consumers who are stockholders than it can represent the plaintiffs who are water consumers and not stockholders. It ought not to take sides in the domestic dispute. This defect of parties defendant was sufficiently urged in the trial court by motion, by demurrer, by answer, by motion for nonsuit, and at every stage of the trial where it was proper to make the suggestion. The fact that defendant company

answered over after demurrer does not waive the point, for the reason that its stockholders were necessary parties defendant, without whose presence the court ought not to have proceeded to a trial, and a decree that would be binding on them cannot be rendered in their absence, and for the additional reason that in the complaint the attempt was made, by the allegations referred to, to obviate the objection of defect of parties defendant, which could be met by answer rather than demurrer. Had we affirmed this judgment, the defendants not made parties would not be bound by it, but might, in a subsequent action, litigate the claim which plaintiffs have here asserted. Courts should not try actions piecemeal.

3. It is the practice for the prevailing party to draft a decree to be presented to the court for approval, and according to the statement made upon oral argument plaintiffs, as the successful parties, prepared the decree which the court afterwards signed. If there are defects in it, the plaintiffs are, in a measure at least, responsible for them. Their request, therefore, that, if this court should consider the decree defective or not sufficiently definite, it wade through the record and make a good decree, does not appeal to us with much force.

That the decree is indefinite, we think is manifestly true. Indeed, plaintiffs themselves suggest as an excuse therefor the novelty of the controversy and the lack of precedent. One of its provisions, wherein we think it radically defective, is that it enjoins the defendant company from compelling plaintiffs to prorate with any of the stockholders who became for the first time users and consumers of water from the ditch subsequent to the enlargement of 1886. This would seem to indicate that there may be some stockholders whose rights accrued prior to that date, but there is no finding or statement in the decree who such stock-

holders are, or the amount of water to which they are entitled. Plaintiffs should have produced evidence from which such findings of fact could be made. That such findings were not made is doubtless due to the omission of the necessary proof.

In view of the fact that the decree reserved to the plaintiffs the right to have the cause redocketed for the purpose of having such further action taken as was necessary and proper for its enforcement, and for the protection of any rights of the parties, such insufficiencies entail upon defendant company the necessity for ascertaining, at its peril, who such stockholders are, and thus impose a burden and hardship from which a properly drawn decree should exempt it. A party ought not to be thus enjoined without some provision in the decree to guide him.

As the case must be reversed, a few additional general remarks may be appropriate. Plaintiffs in error vigorously assert that the court made a number of erroneous rulings in the admission and rejection of testimony. It would be futile to consider them in detail, but in general it may be said that it does appear from the abstract of the record that the court refused to permit defendants to introduce evidence of the same character as that admitted in behalf of plaintiffs. It is difficult to understand why defendants should be restricted from negativing plaintiffs' evidence upon any controverted issue. If the evidence which the court, over defendants' objections, permitted the plaintiffs to produce was material and competent, certainly similar negative evidence in behalf of the defendants should have come in. Some latitude in admitting and rejecting evidence is allowed where the case is tried by the court; and the presumption is sometimes indulged that if the court had admitted improper evidence, the same will be dis-

regarded when it makes its findings. But, as we view this record, some of the rulings of the trial court in declining to hear competent and relevant evidence of the defendants, was wrong.

Objection seems not to have been made that there was a defect of parties plaintiff. In view of another trial, we are of opinion that all the water consumers similarly situated with the plaintiffs should be joined as plaintiffs, but if their consent thereto cannot be had, they should be joined as defendants, so that in one action there will be had an adjudication which settles the rights of all the water consumers from this canal. The records of this court show that disputes between these stockholders and water consumers have been prolific of litigation, and possibly have already consumed a disproportionate share of the court's time. This multiplicity of suits has been due, in part at least, to the failure strictly to enforce the rules of established practice requiring the presence in one proceeding of all those whose rights to the use of water from the same ditch are involved. We repeat that the court should require the production of evidence showing in detail and fully the respective rights of all water consumers, when the priority of each consumer, or class of consumers, attached, with the quantity of water belonging to each. We are led to these observations by the fact that in the decree it seems to be taken for granted that those who became consumers after 1886 necessarily have no rights of an earlier date. It may be true, but it does not necessarily follow, that some particular stockholder or water consumer who himself began to utilize the water later than 1886 has no rights of an earlier date, but this is not a necessary conclusion. For aught that appears from this record it may be true—indeed, we think the record shows it to be true—that the rights of some such go back as far as 1860, or 1872, the respective

dates of the first two appropriations, but there is lacking the definite information upon these, as well as other, material issues, that the court should have before entering a decree.

In reaching our conclusion, we have gone upon the assumption that the evidence in behalf of plaintiffs upon the main question is not controverted. What the facts may be when the case is tried as it should be, we do not anticipate, as of course we could not, in justice to the rights of the respective parties. We intimate no opinion as to the special defenses, such as estoppel, statute of limitations and laches, if for no other reason because the defects in plaintiffs' proof equally apply to the defendants'.

The decree is reversed and the cause is remanded.

*Reversed.*